## EX PARTE OSTENDORFF.

1. In a contest between two creditors of the deceased for administration on his estate the judge of probate properly issued letters to the greater creditor, although the appointment of the other petitioner was requested by the widow and by other creditors representing more than half of the indebtedness of the deceased.

2. Where none of the persons having a preference under the statute applies for administration, the judge of Probate may consider their wishes in selecting an appointee, but he is not controlled by their suggestions.

3. The administrator of one to whom the deceased was indebted is a creditor of the deceased within the meaning of Chapter LXXXVIII., § 1, Subd. 6, of the General Statutes of 1872.

Before MACKEY, J., Charleston, February, 1881.

The case is fully stated in the opinion of this court.

Messrs. *Lord & Inglesby*, for appellant.

Messrs. *Campbell & Whaley*, contra.

March 20, 1882.   The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.    Mrs. Emma R. Moses on the 8th day of July, A.D. 1880, applied by petition to the Probate Court for Charleston county for letters of administration upon the estate of C. C. Bowen, late of said county, deceased. Before action by the Probate Court, the appellant, G. W. Dingle, filed a caveat, and subsequently, to wit, on 22d January, 1881, petitioned to be appointed himself, on the ground that he was a large creditor.

At the same time respondent, John H. Ostendorff, made application for the appointment.   The petition of Ostendorff was recommended by a large number of the creditors, with claims amounting in the aggregate to $17,769.67; besides, Ostendorff claimed to be a creditor to the amount of $4202.54 in his own right.   The appointment of Ostendorff was also requested by the widow.   Mrs. Moses, it seems, had withdrawn her application.

Upon the hearing in the Probate Court evidence was introduced that Dingle, as the administrator of Wm. B. Dingle, represented a judgment for some $6000 ; also a simple contract debt for about $4000.   The Probate judge granted letters to Dingle, stating in his order of appointment "that he was the largest judgment creditor ; was a gentleman who would bring to the work of administrator an intimate knowledge of the duties of his office and of the status of the estate ;" and that the best interests of the estate would be subserved by his appointment.

Ostendorff appealed to the Circuit Court, Judge Mackey presiding, who reversed the decree of the Probate judge, and ordered letters to issue from the Probate Court to Ostendorff

upon his entering into good and sufficient bond as prescribed by law.

This decree of Judge Mackey was founded upon the facts that Ostendorff was a large creditor of the deceased, that he was the choice of the widow and a majority of the creditors, and also because Dingle was the administrator of a creditor, and not a creditor in his own right.

Under an act of the general assembly the Probate judge of the county where the intestate resided is invested with the power of granting letters of administration, and the validity of his decree and judgments thereunder must be determined by the requirements of this act. The act upon this subject is found incorporated in *Gen. Stat.*, p. 451. It provides that *administration* shall be granted in a certain order. In Subdivision 6 of Section 1 it is enacted: That in default of the previous classes the greatest creditor or creditors shall receive the appointment. Here there was default of all the previous classes, and the contest was between two parties, each claiming to be a creditor. According to the terms of the act in such case, it was the duty of the Probate judge to ascertain which of the two was the greater creditor. That being determined, the act became imperative.

But it is said that Ostendorff represented a majority of the creditors and also the widow. This, no doubt, was true, and if the act had given the widow the authority to nominate or a majority of the creditors to recommend, then the Probate judge would have been bound to yield to these suggestions. This, however, would have delegated to the widow and the creditors the power of appointment instead of to the Probate judge, which has not been done. On the contrary, this authority is expressly conferred upon the Probate Court without qualification or limitation, except that the appointment shall be made in a certain order.

The cases of *Thompson* v. *Hucket*, 2 *Hill*, 348, and *McBeth* v. *Hunt*, 2 *Strob*. 338, are not in conflict with this position; on the contrary, they support and confirm it. In the first the contest was between two strangers. The court held that in the absence of kindred and creditors it was discretionary with the

Ordinary, under the act of 1789, as well as at common law, to whom he should grant the letters. In the latter the contest was again between two strangers. This was under the act of 1839. The Ordinary had appointed the nominee of the widow under a mistake of the law, which he supposed required him to make the appointment in accordance with the request. The court, while sustaining the appointment, distinctly declared that the widow's request or nomination carried no legal force whatever with it. The court said "that it was true the law gave to the widow the right to administer and it cannot be denied her. But it by no means follows from this that she may transfer her right to a stranger." This the court said would be giving her not only the right to administer, but also the power of appointment, thus substituting her discretion for that of the Ordinary.

When no one applies in the order prescribed by the act, it would not be improper for the Probate judge, in reaching a conclusion as to a suitable appointee, to listen to the suggestions of those who, if they applied, would be entitled; but such suggestions are not controlling. They would be simply advisory, and if rejected would give no ground for an appeal. This applies to the recommendations of creditors as well as to the widow and other kindred. *McBeth* v. *Hunt, supra.* This disposes of the first ground upon which the Circuit judge reversed the decree of the Probate judge.

The judge held, secondly, that Dingle was not a creditor in the sense of the act, but that Ostendorff was, and therefore by the terms of the act he should have been appointed. It seems that the amount represented by Dingle was admitted to be much the largest of any other single creditor, and that, as we have seen, the recommendation of the other creditors had no legal force; so that unless the position that Dingle, being only the administrator of a creditor, was not such a creditor as is contemplated by the act be correct, it would seem to follow that the judge was in error in reversing the Probate judge's decree on that ground.

Administration vests the legal title of the personal effects of the intestate in the administrator. It is true the administrator,

as to such assets, occupies somewhat the position of a trustee but he is none the less the legal owner thereof, and becomes as much entitled to exercise all the rights of ownership as if he were in possession of it as his individual property.

We see nothing in the terms of the act, or in its purpose and spirit, which limits the term *creditor*. to one who only claims in his individual capacity and excludes one claiming in a representative right. Nor does there appear to be any inconsistency in the two positions. Dingle was in fact as much a creditor of the estate as Ostendorff, and, being the largest creditor, was entitled under the law to the administration.

It is the judgment of this court that the judgment of the Circuit Court be reversed, and that the case be remanded to be determined in accordance with the principles herein adjudged.